## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 11 2019, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dave Davies,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

January 11, 2019

Court of Appeals Case No.
18A-CR-1098

Appeal from the Marion Superior
Court

The Honorable Annie Christ,
Judge

Trial Court Cause No.
49G24-1508-FD-28429

**Tavitas, Judge.**

## Case Summary

Dave Davies appeals his conviction for dissemination of a matter harmful to minors, a Class A misdemeanor. We affirm.

## Issue

Davies raises one issue on appeal, which we restate as whether the evidence is sufficient to convict Davies of dissemination of a matter harmful to minors, a Class A misdemeanor.

## Facts

Davies was a teacher at Emma Donnan Middle School in Indianapolis. The school emphasized to teachers that the teachers "were there to try to build special relationships with the students in order to make them feel more secure within the educational process . . . ." Tr. Vol. IV p. 128. Generally, the school encouraged the teachers to "build relationships with kids who[m] [the teachers] felt [the teachers] could become positive mentors to . . . ." *Id.* The school, however, also emphasized limitations in relationship building, such as: (1) teachers should not be alone with students while traveling; and (2) teachers should avoid traveling with students in the teachers' personal vehicles.

Davies taught biology and Future Farmers of America ("FFA") in the seventh and eighth grades. Davies also was considered one of C.W.'s mentors. Over the two years that Davies taught C.W., C.W. would see Davies every day for "about [forty] minutes" in class. *Id.* at 76. Davies and C.W. would also interact often outside of class. C.W. would stay after school roughly three to

four times a week and talk to Davies about "work that [C.W.] needed to make up," or about C.W.'s goals and future plans. *Id.* at 77. C.W. thought Davies was a "nice guy" and someone C.W. could look up to. *Id.* C.W. also thought Davies would help C.W. continue on a path towards college.

[5] C.W. considered himself to have a good relationship with Davies, and at school, Davies would "do this motion that was kinda [sic] like a ball tap," where Davies would do a "flicking motion" with the back of his hand in the area of C.W.'s groin. *Id.* Davies did this on more than one occasion, and it was considered in a "joking manner." *Id.* at 77-78. C.W. just laughed it off even though this made him uncomfortable because he did not want his relationship with Davies to end. A classmate of C.W. testified that he saw Davies often touch C.W. by "pokin[g] [C.W.'s] neck, and like pokin[g] at [C.W.'s] sides and stuff." *Id.* at 57.

[6] Toward the end of C.W.'s eighth grade year, Davies also assisted C.W. with several home projects. For example, Davies helped C.W. renovate his bedroom. C.W. testified that his mother was home when Davies came to C.W.'s house one to two times per week.

[7] On one occasion around May 2014, C.W. and Davies went to Lowes to pick up supplies to continue the renovations in C.W.'s room. While leaving Lowes, Davies indicated to C.W. that he wanted to make C.W. breakfast at Davies' apartment. C.W. and Davies went to K-Mart to pick up food to make breakfast and then went to Davies' apartment. Davies and C.W. made breakfast and

then sat down at the table to eat. After Davies sat down, Davies told C.W. that he had to get something. Davies got his laptop and brought it over to the table. When Davies opened his laptop, C.W. testified that Davies' laptop was "playing porn." *Id.* at 84. During the trial, C.W. described what he saw as a "Hispanic girl and a Hispanic guy, and she was layin' [sic] on a table, and they were doing sexual acts." *Id.* C.W. testified that he just continued to eat his food and looked down—not wanting to look at the computer. C.W. was "really uncomfortable and [] just hoped that [Davies] would just close [the laptop]" and remove it from the table. *Id.* at 85.

[8] While Davies had his laptop at the table, Davis said to C.W., "I thought I heard you like Hispanic girls" and said: "You just watch it. Just watch it." *Id.* C.W. told Davies that he did not want to watch and that he was uncomfortable. After about ten minutes of having the laptop at the table, Davies took the laptop away from the table and said, "'I'll just save it for later' and said that [C.W.] must be gay or something." *Id.* After finishing breakfast, Davies offered to watch a movie with C.W., but C.W. declined, so Davies took C.W. home and they worked on C.W.'s bedroom.

[9] C.W. continued to communicate with Davies for approximately two months after the incident. C.W. wanted to "cut it off because [he] felt like it was best for [him]." Davies, however, continued email contact with C.W. C.W. did not report the incident; C.W. testified that he would "usually joke around about it [with friends] to try and get it off [his] mind and try to forget about it." *Id.* at 86. A few years later, C.W.'s band teacher overheard C.W. discussing the

incident with his friends. C.W.'s band teacher reported what he heard to the school principal. The principal reported the allegations to law enforcement to investigate. There was no evidence presented regarding any video on Davies' computer; nor was any video played at the trial. There was no additional context given to the video C.W. claims Davies showed him.

[10] Davies was charged with Count I, dissemination of a matter harmful to minors, a Class D felony; Count II, battery, a Class B misdemeanor; Count III, battery, a Class B misdemeanor; and Count IV, battery, a Class B misdemeanor. A jury found Davies guilty of Count I, not guilty of Counts II and III, and the State dismissed Count IV. At sentencing, the trial court acknowledged that the jury found Davies guilty of a Class D felony, but the Court reduced Davies' conviction to a Class A misdemeanor and entered judgment accordingly. Davies was sentenced to 365 days in jail, with 361 days suspended.

## Analysis

[11] Davies challenges the sufficiency of the evidence on his conviction for dissemination of a matter harmful to minors, a Class A misdemeanor. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985)). Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting

*Bieghler,* 481 N.E.2d at 84)*; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[12] Davies does not challenge every element of the offense.[1] Instead, Davies only challenges the sufficiency of the evidence regarding the harmfulness of the disseminated material. Indiana Code Section 35-49-3-3 states, "[e]xcept as provided in subsection (b), a person who knowingly or intentionally: (1) disseminates matter to minors that is harmful to minors; . . . commits a Level 6 felony." Whether the material is harmful to minors is determined by Indiana Code Section 35-49-2-2, which states:

> A matter or performance is harmful to minors for purposes of this article if:

---

[1] In fact, Davies concedes that the first two elements were met, and specifically states:

> In this case, the State was required to prove three material elements, but it only succeeded in proving two. The elements of the crime at issue are (1) knowingly or intentionally (2) disseminating matter to a minor (3) that is **harmful to the minor.**

Appellant's Br. p. 8 (emphasis supplied).

(1) it describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse;

(2) considered as a whole, it appeals to the prurient interest in sex of minors;

(3) it is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors; and

(4) considered as a whole, it lacks serious literary, artistic, political, or scientific value for minors.

[13] Davies seems to be arguing that it was wrong for the jury to accept C.W.'s classification of the video as pornography without any other evidence. C.W. testified that the video he was shown was "porn." Tr. Vol. IV p. 84. C.W. also testified that the video he saw was of a Hispanic male and Hispanic female who were engaged in "sexual acts." *Id.* Further, the State introduced emails from Davies to C.W. that said:

> I now know through a few people that you have blocked me and are not returning messages because I have done something to aggravate you or have "turned weird." I can respect that and am okay with that. However, I do ask this, if you would, let me explain a few things and ask that you can look past it when you see it through my eyes.

State's Ex. 2.

[14] Davies' argument that C.W.'s description of "sexual acts" or "porn" is not descriptive enough is simply an invitation for us to reweigh the evidence, which

we cannot do. [2] *See Gibson,* 51 N.E.3d at 210. Under these circumstances, the jury could reasonably have found that Davies showed C.W. material that was harmful to a minor, as defined by Indiana Code Section 35-49-2-2. Accordingly, the evidence was sufficient.

## Conclusion

[15] Based on the foregoing, we find the evidence was sufficient to convict Davies of dissemination of a matter harmful to minors, a Class A misdemeanor. We affirm.

Affirmed.

Brown, J., and Altice, J., concur.

---

[2] Although we find that the evidence was sufficient to convict Davies of disseminating matter harmful to minors, we encourage the State to elicit more facts regarding each element of the offense charged during trial.